IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| FEI WANG, | ) | |
| | ) | Case No. CV 08-429-S-CWS |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM DECISION AND** |
| v. | ) | **ORDER** |
| | ) | |
| MICHAEL CHERTOFF, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

**I.**
**Background**

Plaintiff Fei Wang, proceeding *pro se*, filed this Complaint seeking a Writ of Mandamus,
relief under the Administrative Procedure Act, and for Declaratory Judgment.  He is asking the
Court to compel individuals within the U.S. Department of Homeland Security and the U.S.
Citizenship and Immigration Services Department ("USCIS") (collectively, "Defendants") to
expedite the processing of his pending application to adjust his immigration status to permanent
resident, and to adjudicate the matter by declaring Defendants' failure to act is arbitrary and
capricious and an abuse of discretion.  (Compl. at 13, Docket No. 1.)  He seeks fees under the
Equal Access to Justice Act as well.

**MEMORANDUM DECISION AND ORDER - Page 1**

Defendants have moved the Court to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6), asserting that Mr. Wang's claims are not properly brought under the federal statutes cited, and thus the Court lacks jurisdiction.  In the alternative, Defendants argue that Mr. Wang has failed to state a claim upon which relief can be granted.  Mr. Wang filed a response, contending that Defendants are entirely responsible for the delay in processing his application, visa numbers were available during the time his application was pending, and the delay is unreasonable.

The Court held a hearing on this matter on February 10, 2009, and both parties presented oral argument.  This matter is now ripe for review.  After careful consideration of the authorities and arguments presented, the Court will deny Defendants' Motion to Dismiss for the reasons discussed below.

## II.
## Facts

The following undisputed facts, except where otherwise noted, are gleaned from Mr. Wang's Complaint and the Defendants' submission of Defendant F. Gerard Heinauer's Declaration (Docket No. 10), as well as representations made during oral argument.  Mr. Wang is a native and citizen of China.  He entered the United States to attend Pennsylvania State University for graduate studies in 2001.  After graduating with a Ph.D. in Engineering Science in 2005, Micron Technology, Inc. ("Micron") hired Mr. Wang.  In October 2005, Mr. Wang was granted status as an H-1B nonimmigrant temporary worker based upon a petition Micron filed on his behalf.  He currently enjoys lawful nonimmigrant status in the United States as an H-1B temporary worker authorized to remain in the United States and work for Micron through

September 30, 2011.  He may renew his nonimmigrant temporary worker status upon application by his employer.

Mr. Wang desires to become a permanent resident.  To that end, he filed a Form I-140 visa petition for immigrant worker (aka "green card") with USCIS on March 13, 2006, the first step in obtaining permanent residency.  The Form I-140 Petition was approved on May 10, 2006, and thereafter, Micron filed an application for Adjustment of Status, Form I-485, on Mr. Wang's behalf on June 19, 2007, at the USCIS Nebraska Service Center.  Mr. Wang's application for adjustment of status was based upon the employment-based second-preference (EB-2) immigration petition (Form I-140) he had filed on March 13, 2006.  Mr. Wang's Form I-485 application for Adjustment of Status was given a priority date of October 31, 2005, which date was based upon his October 2005 H-1B application.

Because of the delay in obtaining permanent residence status as a second preference EB-2 advanced degree professional worker, on February 16, 2007, Micron filed a second Form I-140 visa petition for immigrant worker on Mr. Wang's behalf as a first preference alien worker of extraordinary or outstanding ability.  Micron attempted to gain a higher classification so that Mr. Wang could file for adjustment of status more quickly, because traditionally, there is no wait for first preference visa numbers.  The first preference Form I-140 visa petition was denied on its merits by USCIS on August 7, 2008.  Unfortunately, when Mr. Wang's first preference visa petition was denied, the officer reviewing his file overlooked the original second preference Form I-140 filed on March 13, 2006.  The reviewing officer therefore denied Mr. Wang's request for Adjustment of Status, Form I-485.

Mr. Wang filed a motion to reconsider with USCIS on August 28, 2008, pointing out that the denial of the Form I-485 was in error because the first Form I-140 second preference visa petition had already been approved, and the Form I-485 was meant to support the second preference Form I-140, not the first preference Form I-140.  The officer who reviewed the motion agreed, reopened Mr. Wang's file on September 1, 2008, and refunded Mr. Wang's $585.00 fee submitted to file the motion to reconsider.  Mr. Wang's case was put back into normal processing for a second preference professional worker based upon his established October 31, 2005 priority date and June 19, 2007 Form I-485 filing date.

Mr. Wang completed his security and background checks following the submission of his Form I-485.  These background checks included, among other things, a finger print check and an FBI name check.  The FBI completed Mr. Wang's name check on September 12, 2007.  All of Mr. Wang's preliminary background checks were completed, and if there are any remaining checks to be performed, they can be done at the time of final adjudication if deemed necessary.

Mr. Wang's Form I-485 Adjustment of Status application has remained pending since June 19, 2007, because there is no visa number available for him.  He continues to enjoy a priority date of October 31, 2005.  But, a visa number must be available both at the time the I-485 is filed and when the I-485 is adjudicated, before an application may be finally adjudicated.

Defendants explained, in great detail, how Adjustment of Status applications are finally adjudicated.  By statute, only 140,000 foreign born persons and their relatives may obtain green cards through employment-based categories during each fiscal year, with percentage limits set by Congress based upon a per country basis.  There is, and has been, a high number of Chinese applicants, and a waiting list exists based upon an applicant's priority date.  During the time

**MEMORANDUM DECISION AND ORDER - Page 4**

period that Mr. Wang filed his Form I-485 Adjustment of Status application on June 19, 2007,

USCIS received over 340,000 applications.  Once individuals higher on the waiting list than Mr.

Wang received a visa number during this period, the second preference numbers for China

retrogressed to January 1, 2003.  Thus, in July 2007, only those applicants with a priority date on

or before January 1, 2003 were eligible to receive a visa number.

USCIS considers applications for adjustment of status in date-received order.  The

Nebraska Service Center of USCIS currently has approximately 135,000 employment-based

Form I-485 adjustment of status cases pending.  Mr. Heinauer contends that Mr. Wang's case

will be completed once a visa number becomes available to him.  He also represents that it

would prejudice Mr. Wang if USCIS were to request a visa number while none was available,

because the Department of State would decline to issue a visa number and Mr. Wang's

application would be denied.  Defendants represent that the February 2009 visa bulletin indicates

the Department of State is issuing visa numbers to second preference Chinese workers with

priority dates earlier than January 1, 2005, which is nine months prior to Mr. Wang's priority

date.  (Suppl. Ex., Docket No. 16.)

Mr. Wang, however, refuses to accept the government's explanation for the delay.  He

alleges that, but for the mistake made on August 7, 2008, in denying his Form I-485, overlooking

his first Form I-140, and the resulting delay the motion to reconsider caused, he would have

received a visa number.  (Compl. ¶ 23, Docket No. 1.)  Defendants confirmed that during

August and September 2008, the Department of State opened up second preference China

numbers to those with priority dates earlier than January 6, 2006, which would have included

Mr. Wang, but because of the number of requests, the numbers retrogressed by October 2008 to

**MEMORANDUM DECISION AND ORDER - Page 5**

those applicants having a priority date prior to April 1, 2004.  (Heinauer Decl. ¶ 14, Docket No.

10.)  Despite the availability of a visa number during August and September 2008, Defendant

Heinauer asserts that the erroneous August 7, 2008 denial of the Form I-485 did not prejudice

Mr. Wang.  (Heinauer Decl. ¶ 26, Docket No. 10.)  Heinauer represents that there were "so many

other adjudication-ready second preference Chinese adjustment of status cases in line ahead of

Plaintiff's case that his file was not moved to an officer in its turn before the visa numbers

retrogressed."  (Heinauer Decl. ¶ 15, Docket No. 10.)  Thus, before Mr. Wang's application

could be processed, the numbers retrogressed.

Mr. Wang, however, contends that had the mistake of denying his Form I-485 not been

made, and had there been no delay occasioned by that mistake, he would have received a visa

number before the numbers retrogressed again in October 2008.  At the hearing, counsel for

Defendants represented that the USCIS employee "missed" Mr. Wang's application, and did not

see that his Form I-485 application for Adjustment of Statues based upon Mr. Wang's second

preference Form I-140 visa petition could have been granted as of August 2008.  Counsel

affirmatively stated that, had the mistake not been made, Mr. Wang likely would have received

an available visa number at that time, although she stopped short of guaranteeing that would

have happened.  (*see also* Reply Brief at 2, Docket No. 15, wherein Defendants represented that

there were openings in the priority two category, but Mr. Wang's application was overlooked by

the priority one agent.)  Even when the mistake was realized by September 1, 2008, visa

numbers remained available until October 2008.  But Mr. Wang's application file was not

immediately reevaluated at that time.  (*Id.*)

**MEMORANDUM DECISION AND ORDER - Page 6**

**III.**

**Discussion**

**A.      Standard of Review.**

Federal courts possess limited jurisdiction.  *In re Hunter*, 66 F.3d 1002, 1005 (9th Cir.

1995).  They possess "only that power authorized by Constitution and statute."  *In re Hunter*, 66

F.3d at 1005 (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)).  "For a

federal court to have subject matter jurisdiction to hear an independent action there must be

some statutory or constitutional basis for its jurisdiction."  *Id.*

Defendants filed their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), lack of

subject matter jurisdiction, and Fed. R. Civ. P. 12(b)(6), failure to state a claim upon which relief

can be granted.  There are two types of Rule 12(b)(1) motions: facial or factual.  *Safe Air for*

*Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *White v. Lee*, 227 F.3d 1214,

1242 (9th Cir.2000)).  "In a facial attack, the challenger asserts that the allegations contained in a

complaint are insufficient on their face to invoke federal jurisdiction.  By contrast, in a factual

attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise

invoke federal jurisdiction."  *Safe Air for Everyone*, 373 F.3d at 1039.  In this case, Defendants

have mounted a facial attack contending that the facts as stated cannot invoke federal jurisdiction

under the APA or Mandamus Act.

A motion to dismiss under Rule 12(b)(6) will be granted when the complaint fails to state

a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In a reviewing a complaint

under this Rule, all allegations of material fact are taken as true and construed in the light most

favorable to the nonmoving party.  *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

However, a complaint, or portions thereof, will be dismissed if the plaintiff cannot establish "any

set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1969 (2007) .

A complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations . . . but requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp.*, 127 S.Ct. at 1964-65 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 1965. The complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 1974.

If either party submits materials outside the pleadings in support or opposition to the motion, and the Court relies upon those materials, a motion to dismiss under Rule 12(b)(6) must be converted into a motion for summary judgment. *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996). But if the Court does not rely upon the extra materials in rendering its decision, a Rule 12(b)(6) motion need not be converted into a motion for summary judgment simply because matters outside the pleading are introduced. *Keams v. Tempe Tech. Institute, Inc.*, 110 F.3d 44, 46 (9th Cir. 1997).

**B.** **Arguments of the Parties.**

Defendants contend that the statutes upon which Mr. Wang relies do not confer jurisdiction upon this Court because adjudication of applications for adjustment of status are committed to agency discretion under 8 U.S.C. § 1255(a). Consequently, Defendants assert that they do not have a clear, nondiscretionary duty to either approve Wang's application or immediately adjudicate it. When matters are relegated to agency discretion, Defendants argue

**MEMORANDUM DECISION AND ORDER - Page 8**

that federal courts are without jurisdiction.  In the alternative, Defendants assert that, even if the federal court had jurisdiction, there are no visa numbers available as required by 8 C.F.R. § 245.2(a)(5)(ii), and so USCIS cannot approve Mr. Wang's application.  Defendants also argue that 8 U.S.C. § 1252(a)(2)(B)(ii) removes Mr. Wang's claims from the jurisdiction of the federal courts.

Mr. Wang asserts that Defendants' arguments are without merit because Defendants did not process his application correctly and unreasonably delayed an adjudication of his application at a time when visa numbers were available.  Mr. Wang also argues that he is not responsible for the delay, and that the Court has the authority to compel agency action unlawfully withheld or unreasonably delayed.  He points out that he has been waiting since June 19, 2007, for USCIS to adequately adjudicate his application.  Mr. Wang contends that the Court has jurisdiction when agency defendants "unreasonably delay or fail to take action," especially considering his background checks are complete and, at this time, there is no discretion involved with the processing of his application.

**C.      Applicable Law.**

      **1.      Immigration and Nationality Act.**

Adjustment of status applications are governed by 8 U.S.C. § 1255(a), which states:

> (a) Status as person admitted for permanent residence on application and eligibility for immigrant visa
>
> The status of an alien who was inspected and admitted or paroled into the United States or the status of any other alien having an approved petition for classification as a VAWA self-petitioner **may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if** (1) the alien makes an application for such adjustment, (2) the alien is eligible to

**MEMORANDUM DECISION AND ORDER - Page 9**

receive an immigrant visa and is admissible to the United States for permanent residence, **and (3) an immigrant visa is immediately available to him at the time his application is filed.**

8 U.S.C. § 1255(a) (emphasis added).  The Attorney General's authority has, in part, been transferred to the Secretary of Homeland Security ("DHS") and the United States Customs and Immigration Services ("USCIS").  *See* 6 U.S.C. § 271(b)(5);[1] 6 U.S.C. § 557; *Tao Luo v Keisler*, 521 F.Supp.2d 72, 72 n.2 (D.D.C. 2007) (noting that Section 1255(a) gives the Attorney General authority to adjudicate adjustment of status applications, but that the authority has been transferred to the Secretary of Homeland Security and his delegate in USCIS).

USCIS regulations provide that "[a]n application for adjustment of status, as a preference alien, shall not be approved until an immigrant visa number has been allocated by the Department of State[.]"  8 C.F.R. § 245.2(a)(5)(ii).  It is apparently the practice of USCIS to not request a visa from the State Department until it determines that an applicant is otherwise eligible for adjustment of status.  (*See* Mem. at 5, Ex. 2, USCIS Field Adjudicator Manual, Docket No. 4-2.)

---

[1]  6 U.S.C. § 271(b)(5) states:

(b) Transfer of functions from Commissioner
In accordance with subchapter XII of this chapter (relating to transition provisions), there are transferred from the Commissioner of Immigration and Naturalization to the Director of the Bureau of Citizenship and Immigration Services the following functions, and all personnel, infrastructure, and funding provided to the Commissioner in support of such functions immediately before the effective date specified in section 455:
(1) Adjudications of immigrant visa petitions.
(2) Adjudications of naturalization petitions.
(3) Adjudications of asylum and refugee applications.
(4) Adjudications performed at service centers.
(5) All other adjudications performed by the Immigration and Naturalization Service immediately before the effective date specified in section 455.

Section 1252 further provides that "no court shall have jurisdiction to review . . . any judgment regarding the granting of relief of an adjustment of status" or "any other decision or action of the Attorney General or the Secretary of Homeland Security [that is] in the discretion of the Attorney General or the Secretary of Homeland Security."  8 U.S.C. § 1252(a)(2)(B)(ii).

**2.      Mandamus.**

Mandamus is an extraordinary remedy "available to compel a federal official to perform a duty only if: (1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available."  *Patel v. Reno*, 134 F.3d 929, 931 (9th Cir. 1997); 28 U.S.C. § 1361 ("the district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.").

**3.      APA Jurisdiction.**

To invoke jurisdiction under the Administrative Procedure Act ("APA"), a "petitioner must show that (1) an agency had a nondiscretionary duty to act and (2) the agency unreasonably delayed in acting on that duty."  *Gelfer v. Chertoff*, 2007 WL 902382 at *1 (N.D. Cal., March 22, 2007) (citing *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 63-65(2004)).  "Once a petitioner has proven a right to relief under the circumstances, it is the reviewing court's duty to 'compel agency action unlawfully withheld or unreasonably delayed.'"  *Id.* (quoting 5 U.S.C. § 706(1)).  Section 706 provides, in pertinent part:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning

> or applicability of the terms of an agency action. The reviewing court shall—
> (1) compel agency action unlawfully withheld or unreasonably delayed;
> . . .
> In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706.  The APA further directs that "each agency shall proceed to conclude a matter presented to it" "within a reasonable time."  5 U.S.C. § 555(b).  However, 5 U.S.C. § 706(1) only empowers a court to compel an agency "to perform a ministerial or non-discretionary act," or "to take action upon a matter, without directing *how* it shall act."  *Norton*, 542 U.S. at 64.

### 4.    Declaratory Judgment Act.

28 U.S.C. § 2201 states that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Under the Declaratory Judgment Act, Congress merely enlarged the range of remedies available in federal courts, but did not extend their jurisdiction.  *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950).  Therefore, the Declaratory Judgment Act cannot provide jurisdiction to a court that otherwise would lack independent statutory or diversity jurisdiction.  *Lear Siegler, Inc. v. Adkins*, 330 F.2d 595, 599 (9th Cir. 1964) (holding that the Declaratory Judgment Act does not establish an independent basis for jurisdiction).  Furthermore, "the existence of jurisdiction in an action for declaratory relief does not require that the court exercise it.  It has a judicial discretion to decline to grant such relief."  *Lear Siegler, Inc.*, 330 F.2d at 599.

5.      **Subject Matter Jurisdiction Decisions.**

Against this backdrop, federal courts are split concerning whether the processing of

Adjustment of Status applications is nondiscretionary such that a federal court will have subject

matter jurisdiction under the APA or Mandamus Act.  In the first line of cases, courts addressing

this issue have concluded that federal courts lack jurisdiction to review agency action, finding

that at all stages of the review process the agency's actions are discretionary.  *See, e.g., Ma v.

Rice*, No. CV-14008 (E.D. Mich. Jan. 22, 2009) (holding the court lacked subject matter

jurisdiction, because there is no time limit imposed upon the USCIS for processing I-485

applications, and the time period falls within the agency's discretion); *Yu v. Chertoff*, No. CV

07-0296, 2008 WL 413269 (S.D.Cal. Feb. 12, 2008) (holding that the court could not intervene

in agency determinations involving the processing of permanent resident visa applications

proceeding in the normal course, and finding dismissal appropriate); *Luo v. Keisler*, 521

F.Supp.2d 72, 74 (D.D.C. Nov. 14, 2007) (holding that the pace of processing a status

application constitutes an "action" within the meaning of the INA, and it is therefore not subject

to review by the court); *Li v. Chertoff*, 482 F.Supp.2d 1172, 2007 WL 1098705 (S.D. Cal., April

2, 2007) (granting motion to dismiss upon finding sufficient evidence to demonstrate that delay

in adjudicating AOS application was not due to agency inaction, but to the time required to

resolve background checks, and holding that USCIS is not required to act within a specified time

period and has discretion to resolve matters within a reasonable time); *Safadi v. Howard*, 466

F.Supp. 2d 696, (E.D. Va. 2006) (holding that the pace at which USCIS processes applications

for adjustment of status is not subject to judicial review, because the entire process under

§ 1252(a)(2)(B)(ii) involves discretionary action or inaction); *Zheng v. Reno*, 166 F.Supp.2d 875,

879–880 (S.D.N.Y. 2001) (granting summary judgment for lack of subject matter jurisdiction, because scheduling is within the agency's discretion and a claim of nine months was insufficient to support a claim of abuse of discretion).

Other courts have concluded otherwise, finding that federal courts do have jurisdiction because certain agency actions are nondiscretionary. *See, e.g., Jiang v. Chertoff*, No. 08-00332 (N. D.Cal. April 28, 2008) (holding that where defendants unreasonably delay or fail to take action, the court has jurisdiction under the APA and mandamus act); *Alibeik v. Chertoff*, No. 07-01938, 2007 WL 4105527 at *5 (N.D.Cal. Nov. 16, 2007) (holding that the better reasoned view is that courts have jurisdiction under the APA because defendants have a non-discretionary duty to process applications within a reasonable amount of time, and the decision is a ministerial duty to act); *Liu v. Chertoff*, No. CV 06-1682, 2007 WL 2435157 (D.Or. Aug. 29, 2007) (concluding that "8 U.S.C. § 1252(a)(2)(B) does not bar an APA claim against the USCIS for violating its non-discretionary duty to adjudicate the I-485 application within a reasonable time" within the context of a failure to complete the FBI name check); *Fu v. Gonzales*, No. 07-0207, 2007 WL 1742376 at *3 (N.D.Cal., May 22, 2007) (finding that the USCIS has a statutory duty under 5 U.S.C. § 555(b) to adjudicate AOS petitions within a reasonable time, and that this duty was ministerial such that jurisdiction existed under the APA); *Dimitriev v. Chertoff*, No. 06-07677, 2007 WL 1319533 at *3 (N.D.Cal., May 4, 2007) (holding that "action" refers to the specific decision to grant or deny an application, not the entire process of reviewing an application).

The line of cases finding that the APA confers jurisdiction construes 5 U.S.C. § 555(b) in tandem with 8 U.S.C. § 1571(b).  Section 555(b) states that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it," while section 1571(b) states that

**MEMORANDUM DECISION AND ORDER - Page 14**

"it is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application . . . ."  *See Alibeik v. Chertoff*, 2007 WL 4105527 at *4.  Courts then look at whether the delay was reasonable, which "depends to a great extent on the facts of the particular case."  *Gelfer v. Chertoff*, No. 06-06724, 2007 WL 902382 at *2 (N. D. Cal., March 22, 2007) (quoting *Yu v. Brown*, 36 F.Supp.2d 922, 934 (D.N.M.1999)).  In addressing the specific issue of unreasonable delay in processing an immigration status application, courts typically have "looked to the source of the delay– *e.g.*, the complexity of the investigation as well as the extent to which the defendant participated in delaying the proceeding."  *Alibeik*, 2007 WL 4105527 at *4 (quoting *Singh v. Still*, 470 F.Supp. 2d 1064, 1068 (N.D.Cal., Jan.8, 2007).[2]

The District of Idaho has yet to weigh in on the jurisdictional question, and to the Court's knowledge, there are no Ninth Circuit decisions on this question.  *See Liu v. Chertoff*, No. CV 06-1682, 2007 WL 2435157 (D.Or. Aug. 29, 2007) (acknowledging no Ninth Circuit authority answers the jurisdictional questions raised with respect to delay in processing adjustment of

---

[2] *Alibeik* identified *Telecomm Research & Action Center v. FCC*, 750 F.2d 70 (D.C.Cir.1984) ("*TRAC*"), as the leading case on the issue of unreasonable delay.  *Telecomm* set forth a six-factor test, commonly called the TRAC Factors, to assess the reasonableness of agency delay:

> (1) the time agencies take to make decisions must be governed by a "rule of reason;"(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

*TRAC*, 750 F.2d at 80 (internal citations omitted), quoted in *Alibeik*, 2007 WL 4105527 at *6; *see also Yu*, 36 F.Supp.2d at 931 (applying TRAC factors in immigration case); *Singh*, 470 F.Supp.2d at 1069 (same).

**MEMORANDUM DECISION AND ORDER - Page 15**

status applications). This Court has, however, declined to intervene in the naturalization process when the delay in granting citizenship was related to the backlog in conducting the FBI name check as part of the slew of background checks required before one can become a citizen. *See, e.g.,* Mem. Order, *Al-Lati v. Gonzales*, Case No. CV 08-00218-S-EJL (Aug. 3, 2007); Order, *Sacirovic v. Gonzales*, Case No. CV 08-00132-S-LMB (Oct. 12, 2007) and attached to Docket No. 15. In those decisions, the Court was unwilling to compel the FBI to complete background checks within a specified time period required to finalize the naturalization process. *See also* Mem. Order, *Mohammed v. Gonzales*, Case No. CV 07-0011-S-MHW (Nov. 27, 2007) (following *Al-Lati* and *Sacirovic*, but requiring the defendants to file a written status report with the court every ninety days as to the progress of the plaintiffs' background and security checks).

**D.     Disposition.**

In the instant case, USCIS's mistake caused Mr. Wang's application to be delayed. Mr. Wang completed all necessary background checks, including his FBI name check. But for USCIS's mistake, Mr. Wang's application for adjustment of status could have been granted in August 2008, when a visa number was available. The mistake was compounded when, upon granting Mr. Wang's motion to reconsider the denial of his application on September 1, 2008, his application was not processed in time before available visa numbers retrogressed in October 2008. Thus, to the extent courts decide the issue of jurisdiction under circumstances involving mere delay or delay by the FBI in processing a name check, the Court finds those cases, including the cases from this Court regarding naturalization petitions, to be factually distinguishable.

Rather, under the facts of this case, the Court finds it has jurisdiction under the APA. The Court agrees with several other district courts within the Ninth Circuit that the better

**MEMORANDUM DECISION AND ORDER - Page 16**

reasoned view is the Court has jurisdiction under the APA, because Defendants have a nondiscretionary duty to process Adjustment of Status Applications within a reasonable time, distinct from the discretionary authority to make the decision to grant or deny the application. *Fu v. Gonzales*, 2007 WL 1742376 at \*2.  Moreover, in *Fu*, USCIS "conceded it had a nondiscretionary duty to process the AOS application." *Id*.  And, 5 U.S.C. § 555(b) prescribes a duty to process a petitioner's application within a reasonable time.  Although no time period is specified, if USCIS were given a limitless amount of time, that would contradict the statutory requirement that the time period be reasonable. *Fu*, 2007 WL 1742376 at \*3.  Finally, Congress has expressed its opinion that 180 days is a reasonable time period.  8 U.S.C. § 1571(b).

Furthermore, under the facts of this case, USCIS had a ministerial duty to act upon Mr. Wang's first Form I-140 visa petition when it came before the USCIS officer processing his application, and again after Mr. Wang's motion for reconsideration was granted.  At both times his application came before USCIS officers, a visa number was available, and neither party has identified any basis upon which Mr. Wang's application would have been denied.  It is therefore difficult for the Court to understand what "discretionary" function was left to perform in this case.

Nor does § 1252(a)(2)(B)(ii) preclude jurisdiction in this case.  That statute only precludes judicial review of matters of "pure discretion, rather than discretion guided by legal standards." *Abbasfar*, 2007 WL 2409538 at \*4.  *See, e.g., Lee v. INS*, 407 F.2d 1110, 1113 (9th Cir. 1969) (explaining that the decision whether an alien is an artist of "exceptional ability" so as to entitle the alien to visa preference is a discretionary decision limiting the court's review to that of abuse of discretion).  Unlike in *Lee*, where the decision involved a discretionary determination whether the applicant exhibited "exceptional" artistic talent, the decision to grant or deny Mr.

**MEMORANDUM DECISION AND ORDER - Page 17**

Wang's application during a time when a visa number was available was not a purely discretionary decision.  Mr. Wang's second preference Form I-140 visa petition already had been approved, all of his background checks were completed, and he had submitted the requisite Form I-485 Adjustment of Status application at a time when visa numbers were available.  Also, at the time when his file was being reviewed, visa numbers were again available.  There was no discretion left to exercise.

Section 1252(a)(2)(B), moreover, does not address delay or inaction, which is what Mr. Wang complains of, but rather a "decision" or "action" by immigration officials.  *Abbasfar*, 2007 WL 2409538 at *4.  There is nothing within the act that specifies any discretion associated with the pace of adjudication, which does not involve an affirmative decision.  *Id.*  In this case, no "decision" or "action" took place here other than to place Mr. Wang back in line after USCIS's mistake was realized, despite the availability of a visa number at the time his application was reviewed and mistakenly denied on August 7, 2008, and again when the mistake was realized on September 1, 2008.

Under the APA, Mr. Wang must also show that the delay is unreasonable.  "What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case."  *Liu v. Chertoff*, 2007 WL 2435157 at *8.  Courts within the Ninth Circuit apply the TRAC factors[3] to determine the reasonableness of administrative delays.  *Liu*, 2007 WL 2435157 at *9; *Chao v. Gonzales*, No. C07-1562, 2007 WL 3022548 at *3-4 (N.D. Cal. October 15, 2007) (citing *Brower v. Evans*, 257 F.3d 1058, 1068 (9th Cir. 2001)).  Mr. Wang contends that the delay in his case is unreasonable, because he has

---

[3] *See* note 2, *supra*.

**MEMORANDUM DECISION AND ORDER - Page 18**

been waiting since June 19, 2007, for adjudication of his Adjustment of Status application, and the mistake by USCIS in August 2008 cost him an otherwise available visa number.  Defendants assert that they simply placed Mr. Wang back in line, and he was not prejudiced by the delay the mistake caused.  Although this issue is not before the Court for adjudication, the Court affirmatively finds that it has jurisdiction under the APA, that Mr. Wang has stated a claim under the APA, and that Defendants' Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) will be denied.

Defendants next contend that Mr. Wang's Complaint fails to state a claim because relief cannot be granted due to the lack of an available visa number at this time.  However, Defendants' argument that there are no visa numbers available is irrelevant.  *Abbasfar*, 2007 WL 2409538 at *5.  The statute only requires that a visa be "immediately available to him at the time his application is filed."  *Id.* (citing 8 U.S.C. § 1255(a)).  There is no dispute in this case that, at the time Mr. Wang filed his Form I-485, a visa number was available and that one again was available when his application was reviewed in August 2008.

The unavailability of a visa number also does not correspond to an inability to grant relief under the Mandamus Act as Defendants argue.  For example, in *Marcetic v. INS*, No. 97 C 7018, 1998 WL 173129 (N.D. Ill., April 6, 1998), an immigration judge ordered that a visa number be reserved for Mr. Marcetic.  But, due to a bureaucratic error, the State Department failed to send the reserved visa number to the INS.  At the end of the fiscal year, when all visa numbers had been distributed according to the prescribed numerical limitations, the INS took the position (as USCIS does here) that it could not force the State Department to issue a visa number, and that it could not issue a green card without a visa number.  *Marcetic*, 1998 WL 173129 at *1.  The district court disagreed, noting that the plaintiff should not be penalized for the defendant's

**MEMORANDUM DECISION AND ORDER - Page 19**

ministerial error, and the INS could act if it was ordered to do so. *Id.* The court therefore granted the plaintiff's motion for summary judgment upon his petition for mandamus.

In *Silva v. Bell*, 605 F.2d 978 (7th Cir. 1979), the INS admitted it made a mistake with respect to the issuance of visa numbers to Cuban refugees and the charging of those visa numbers to the Western Hemisphere immigration quota during the period from 1968 to 1976. This had the effect of delaying other Western Hemisphere applicants requesting a visa, specifically Mexican immigrants. Each visa number issued to a Cuban applicant reduced by one the number of Western Hemisphere natives admitted to the United States during the year of issuance, and also prevented persons on the waiting list from advancing to the position on the list they would have occupied but for the wrongful issuance of visa numbers to Cuban refugees. *Silva*, 605 F.2d at 983-84.

In *Silva*, the INS admitted it made a mistake, and was instrumental in fashioning a proposed remedy so that a program to "recapture" and "reissue" the wrongfully issued visa numbers could provide relief to place the plaintiffs in the position they would have occupied but for the mistake in charging the Cuban numbers toward the Western Hemisphere quota. *Id.* at 985. The court in *Silva* ultimately had to decide which remedy, that proposed by the INS or the remedy proposed by the plaintiffs, was more appropriate. *Silva*, 605 F.2d at 985-990.

In this case, USCIS has not advanced any explanation as to why a similar remedy could not be fashioned to "recapture" a visa number wrongfully issued to another applicant that, but for USCIS's mistake, would have been issued to Mr. Wang between August and September 2008. *See also Paunescu v. INS*, 76 F.Supp.2d 896, 902 (N.D. Ill. 1999) (following *Marcetic* and finding mandamus jurisdiction to order the INS to procure a visa number because the plaintiffs were entitled to the visas they would have received but for the defendant's mistake in failing to

**MEMORANDUM DECISION AND ORDER - Page 20**

timely process their applications before the end of the fiscal year when visa numbers became

unavailable).[4]

Accordingly, the Court has jurisdiction under the Mandamus Act to fashion appropriate

relief, and Mr. Wang has stated a claim upon which relief can be granted.  The Court will

therefore deny Defendants' Motion to Dismiss.

**IV.**
**Conclusion**

Based upon above, the Court  will deny Defendants' Motion to Dismiss.  Because

Plaintiff did not file a corresponding motion for disposition on the merits, no relief other than

denial of Defendants' motion is appropriate at this time.  Accordingly, the Court will direct the

Defendants to file an answer and set this matter for a scheduling conference.

---

[4]  At the hearing, the Court inquired of defense counsel if there was any mechanism to change
Mr. Wang's priority date such that he would be eligible to receive a visa number now rather than wait.
Defense counsel did not directly respond, but instead averred that if USCIS asked for the issuance of a
visa number, his application would be denied because one is not currently available.

**MEMORANDUM DECISION AND ORDER - Page 21**

### ORDER

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS**

**HEREBY ORDERED that:**

1)      Defendants' Motion to Dismiss (Docket No. 4) is **DENIED**.

2)      Defendants are to file an Answer within ten (10) days from the date of this

Decision.

3.      A scheduling conference will be set between the parties, and a scheduling

conference order will be forthcoming.



DATED: March 23, 2009

Honorable Candy W. Dale
Chief United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - Page 22**