IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| FEI WANG, ) | Case No. CV 08-429-S-CWD |
| ) | |
| Plaintiff, ) | **MEMORANDUM DECISION AND** |
| ) | **ORDER** |
| v. ) | |
| ) | |
| MICHAEL CHERTOFF, Secretary, U.S. ) | |
| Department of Homeland Security, ) | |
| JONATHAN R. SCHARFEN, Acting ) | |
| Director, U.S. Citizenship and ) | |
| Immigration Services, F. GERARD ) | |
| HEINAUER, Director, U.S. ) | |
| Citizenship and Immigration Services, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff Fei Wang, proceeding *pro se*, filed this Complaint seeking a Writ of Mandamus,

relief under the Administrative Procedure Act, and Declaratory Judgment.  He is asking the

Court to compel individuals within the U.S. Department of Homeland Security and the U.S.

Citizenship and Immigration Services Department ("USCIS") (collectively, "Defendants") to

expedite the processing of his pending application to adjust his immigration status to permanent

resident, and to adjudicate the matter by declaring Defendants' failure to act is arbitrary and

capricious and an abuse of discretion.  (Compl. at 13, Docket No. 1.)  He seeks fees under the

Equal Access to Justice Act as well.

**MEMORANDUM DECISION AND ORDER - Page 1**

The Court denied Defendants' motion to dismiss on March 23, 2009 (Docket No. 17), holding that Mr. Wang had stated a claim and that the Court had jurisdiction.  Presently before the Court is Defendants' Motion for Reconsideration, or in the alternative, Motion to order Mr. Wang to amend his complaint to add the Department of State as an indispensable party (Docket No. 18); Plaintiff's Motion for Summary Judgment (Docket No. 24); Plaintiff's Motion for Status Conference (Docket No. 39); and Plaintiff's Motion to Supplement the Record (Docket No. 40).

The Court has determined that the matters before it are suitable for disposition without a hearing.  Dist. Idaho Loc. Civ. R. 7.1(d)(1)(ii).  All of the pending motions are ripe for review, and the Court has carefully considered the parties' briefs, and the authorities and arguments presented, in reaching its conclusions, which are discussed herein.

## I.      FACTUAL BACKGROUND

The following undisputed facts, except where otherwise noted, are gleaned from Mr. Wang's Complaint and the Defendants' submission of Defendant F. Gerard Heinauer's Declaration (Docket No. 10), as well as representations made during oral argument upon the Defendants' Motion to Dismiss, heard February 10, 2009.  Mr. Wang is a native and citizen of China.  He entered the United States to attend Pennsylvania State University for graduate studies in 2001.  After graduating with a Ph.D. in Engineering Science in 2005, Micron Technology, Inc. ("Micron") hired Mr. Wang.  In October of 2005, Mr. Wang was granted status as an H-1B nonimmigrant temporary worker based upon a petition Micron filed on his behalf.  He currently enjoys lawful nonimmigrant status in the United States as an H-1B temporary worker authorized

to remain in the United States and work for Micron through September 30, 2011.  He may renew his nonimmigrant temporary worker status upon application by his employer.

Mr. Wang desires to become a permanent United States resident.  To that end, he filed a Form I-140 visa petition for immigrant worker (aka "green card") with USCIS on March 13, 2006, the first step in obtaining permanent residency.  The Form I-140 Petition was approved on May 10, 2006, and thereafter, Micron filed an Application for Adjustment of Status, Form I-485, on Mr. Wang's behalf on June 19, 2007, at the USCIS Nebraska Service Center.  Mr. Wang's Application for Adjustment of Status was based upon the employment-based second-preference (EB-2) immigration petition (Form I-140) he had filed on March 13, 2006.  Mr. Wang's Form I-485 Application for Adjustment of Status was given a priority date of October 31, 2005, which date was based upon his October 2005 H-1B application.

Because of the delay in obtaining permanent residence status as a second preference EB-2 advanced degree professional worker, on February 16, 2007, Micron filed a second Form I-140 visa petition for immigrant worker on Mr. Wang's behalf as a first preference alien worker of extraordinary or outstanding ability.  Micron attempted to gain a higher classification so that Mr. Wang could file for adjustment of status more quickly, because traditionally, there is no wait for first preference visa numbers.  The first preference Form I-140 visa petition was denied on its merits by USCIS on August 7, 2008.  Unfortunately, when Mr. Wang's first preference visa petition was denied, the officer reviewing his file overlooked the original second preference Form I-140 filed on March 13, 2006.  The reviewing officer therefore denied Mr. Wang's Application for Adjustment of Status, Form I-485, on August 7, 2008.

Mr. Wang filed a motion to reconsider with USCIS on August 28, 2008, pointing out that the denial of the Form I-485 was in error because the first Form I-140 second preference visa petition had already been approved, and the Form I-485 was meant to support the second preference Form I-140, not the first preference Form I-140.  The officer who reviewed the motion agreed, reopened Mr. Wang's file on September 1, 2008, and refunded to Mr. Wang the $585.00 filing fee submitted for the motion to reconsider.  Mr. Wang's case was put back into normal processing for a second preference professional worker based upon his established October 31, 2005 priority date and June 19, 2007 Form I-485 filing date.

Mr. Wang completed his security and background checks following the submission of his Form I-485.  These background checks included, among other things, a finger print check and an FBI name check.  The FBI completed Mr. Wang's name check on September 12, 2007.  All of Mr. Wang's preliminary background checks were completed, and if there are any remaining checks to be performed, they can be done at the time of final adjudication if deemed necessary.

Mr. Wang's Form I-485 Application for Adjustment of Status has remained pending since June 19, 2007, because there is no visa number available for him.  He continues to enjoy a priority date of October 31, 2005.  But, a visa number must be available both at the time the I-485 is filed and when the I-485 is adjudicated, before an application may be finally adjudicated.

Defendants explained, in great detail, how adjustment of status applications are finally adjudicated.  By statute, only 140,000 foreign born persons and their relatives may obtain green cards through employment-based categories during each fiscal year, with percentage limits set by Congress on a per country basis.  There is, and has been, a high number of Chinese

applicants, and a waiting list exists based upon an applicant's priority date.  When Mr. Wang

filed his Form I-485 Application for Adjustment of Status on June 19, 2007, USCIS had received

over 340,000 applications during June and July of 2007.  Once individuals higher on the waiting

list than Mr. Wang received a visa number during this period, the second preference numbers for

China retrogressed to January 1, 2003.  Thus, in July 2007, only those applicants having a

priority date on or before January 1, 2003, were eligible to receive a visa number.

        USCIS considers applications for adjustment of status in date-received order.  The

Nebraska Service Center of USCIS currently has approximately 135,000 employment-based

Form I-485 adjustment of status cases pending.  Mr. Heinauer contends that Mr. Wang's case

will be completed once a visa number becomes available to him.  He also represents that it

would prejudice Mr. Wang if USCIS were to request a visa number while none was available,

because the Department of State would decline to issue a visa number and Mr. Wang's

application would be denied.  Defendants represent that the February 2009 visa bulletin indicates

the Department of State is issuing visa numbers to second preference Chinese workers with

priority dates earlier than January 1, 2005, which is nine months prior to Mr. Wang's priority

date.  (Suppl. Ex., Docket No. 16.)  In the Government's most recent status update, the January

2010 Visa Bulletin indicates that second preference Chinese immigrants having a priority date of

May 1, 2005, or earlier are eligible to receive a visa number.  (Status Report, Docket No. 42.)

According to Defendants, Mr. Wang likely will be issued a visa number by the end of this fiscal

year, which is September 1, 2010.  (*Id.*)

        Mr. Wang, however, refuses to accept the government's explanation for the delay.  He

alleges that, but for the mistake made on August 7, 2008, in denying his Form I-485, overlooking

**MEMORANDUM DECISION AND ORDER - Page 5**

his first Form I-140, and the resulting delay the motion to reconsider caused, he would have received a visa number. (Compl. ¶ 23, Docket No. 1.) Defendants confirmed that during August and September of 2008, the Department of State opened up second preference China numbers to those with priority dates earlier than January 6, 2006, which would have included Mr. Wang, but because of the number of requests, the numbers retrogressed by October 2008 to those applicants having a priority date prior to April 1, 2004. (Heinauer Decl. ¶ 14, Docket No. 10.)[1] Despite the availability of a visa number during August and September 2008, Defendant Heinauer asserts that the erroneous August 7, 2008 denial of the Form I-485 did not prejudice Mr. Wang. (Heinauer Decl. ¶ 26, Docket No. 10.) Heinauer represents that there were "so many other adjudication-ready second preference Chinese adjustment of status cases in line ahead of Plaintiff's case that his file was not moved to an officer in its turn before the visa numbers retrogressed." (Heinauer Decl. ¶ 15, Docket No. 10.) Thus, it is the government's position that, before Mr. Wang's application could be processed, the numbers retrogressed.

Mr. Wang, however, contends that had the mistake of denying his Form I-485 on his first I-140 not been made, and had there been no delay occasioned by that mistake, he would have received a visa number in September 2008, before the numbers retrogressed again in October 2008. During the hearing on Defendants' Motion to Dismiss, counsel for Defendants represented that the USCIS employee "missed" Mr. Wang's application, and did not see that his Form I-485 Application for Adjustment of Status based upon Mr. Wang's second preference

---

[1] The Exhibits attached to Mr. Wang's Complaint, to which the Defendants did not move to strike and are therefore properly before the Court on the Motion for Summary Judgment, indicated that in August and September, 2008, visa numbers were available to second preference Chinese applicants with priority dates on or before June 1, 2006, and August 1, 2006, respectively, for those two months. (Docket No. 1-4 at 16-17.)

**MEMORANDUM DECISION AND ORDER - Page 6**

Form I-140 visa petition could have been granted in August 2008.  Counsel affirmatively stated

that, had the mistake not been made, Mr. Wang likely would have received an available visa

number at that time, although she stopped short of guaranteeing that would have happened.[2]

Even when the mistake was realized by September 1, 2008, visa numbers for second preference

Chinese applicants remained available until October of 2008.  But Mr. Wang's application file

was not immediately reevaluated at that time.  (*Id.*)

## II.    DISCUSSION

### A.    Plaintiff's Motion for Status Conference and Motion to Supplement the Record (Docket Nos. 39, 40).

As a preliminary matter, the Court will discuss Plaintiff's motion for status conference

and motion to supplement the record.  On September 28, 2009, Plaintiff requested the Court to

"resume" this action and indicate its time frame for adjudicating Plaintiff's motion for summary

judgment, which was filed on April 28, 2009.  The Court notes that there has been a delay, but

the delay is not unusual for the Court's busy calendar.  On August 3, 2009, the Court requested

Defendants supplement the record with a status update concerning the issuance of visas to

second preference Chinese workers.  (Docket No. 36.)  Defendants did so, and according to the

information submitted, visa numbers were available to those second preference Chinese

applicants with a January 2005 priority date, still ten months behind Plaintiff's October 2005

priority date.  (Docket No. 38.)  In their second status update, (Docket No. 42), it appears that

visa numbers remain unavailable.  Accordingly, it appears Plaintiff has not been prejudiced by

the delay.  The status quo has not changed.  The Court therefore will deny Plaintiff's motion for

---

[2] *See also* Defendants' Reply Brief at 2, Docket No. 15, wherein Defendants represented that there were openings in the priority two category, but Mr. Wang's application was overlooked by the priority one agent.

**MEMORANDUM DECISION AND ORDER - Page 7**

status conference, as it has determined that this matter is suitable for disposition without oral argument.  Dist. Idaho Loc. Civ. R.  7.1(d)(1)(ii).

The Court will, however, grant Plaintiff's motion to supplement the record.  Defendants have had an opportunity to supplement the record in response to the additional materials submitted.  (Docket No. 41.)  The Court will consider both parties' supplemental authority in its consideration of the parties' pending motions.

> **B.**    **Motion for Reconsideration or, in the Alternative, to Order Plaintiff to Amend his Complaint Under Fed. R. Civ. P. 19(a) and add the Department of State as a Necessary Party.**

Defendants have moved for reconsideration of the Court's order denying Defendants' motion to dismiss, Docket No. 17.  Defendants contend that the Court's Order does not distinguish between being able to actually adjust status from being statutorily eligible for adjustment of status.  Defendants also object to the Court's statement that the lack of a visa number is "irrelevant" based on language from *Abbasfar v. Chertoff*, 2007 WL 2409538 (N.D. Cal. 2007).

"Courts have distilled various grounds for reconsideration of prior rulings into three major grounds for justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence or an expanded factual record; and (3) need to correct a clear error or to prevent manifest injustice."  *Louen v. Twedt*, 2007 WL 915226 (E.D. Cal. March 26, 2007).  Despite the above averments of error, Defendants have not met their burden on any of these grounds.  The Court issued its memorandum decision and order denying Defendants' motion to dismiss, finding that Plaintiff had stated a claim and that the Court had jurisdiction.  Numerous courts have found claims like the Mandamus and APA claims asserted by Mr. Wang

definite enough to support a cause of action.  *See Amanjee v. Chertoff*, No. CV S-08-0499-JAM-DAD, 2009 WL 347666 *5 (E.D. Cal. Feb. 11, 2009) (noting that in the Eastern District of California, "virtually every district judge who has considered the issue has found that subject matter jurisdiction exists" where a petitioner challenges the failure to adjudicate adjustment of status applications within a reasonable time); *Tang v. Chertoff*, 493 F.Supp.2d 148, 154 (D. Mass. 2007) (citing numerous district court cases holding that immigration authorities have a non-discretionary duty to adjudicate adjustment of status applications, and thus the lack of action by government authorities is subject to review pursuant to the APA).  Accordingly, Defendants' Motion to Reconsider (Docket No. 18) will be denied.

Defendants moved in the alternative for an order requiring Plaintiff to amend his complaint and add the Department of State as a necessary party to the instant action.  Defendants contend that the Department of State is a necessary party because USCIS is unable to issue visa numbers or adjudicate applications for adjustment of status in the absence of a visa number from the Department of State.  Consequently, Defendants argue that this Court cannot "accord complete relief" in the absence of the Department of State.

Defendants' argument was not raised before the Court in its motion to dismiss. Moreover, Defendants' argument is more properly considered by the Court in the context of Plaintiff's motion for summary judgment.  Therefore, to the extent that Defendants request reconsideration based upon the need for Plaintiff to join an indispensable party, their request will be denied.  However, the Court will consider Defendants' contention that the Department of State must be joined as a party in the context of Plaintiff's motion for summary judgment.

C.      Plaintiff's Motion for Summary Judgment.

1.      Standard of Review.

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil

Procedure, which provides, in pertinent part, that judgment "should be rendered if the

pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of

law." Fed. R. Civ. P. 56(c)(2).  Under Rule 56, summary judgment is mandated if the non-

moving party fails to make a showing sufficient to establish the existence of an element which is

essential to the non-moving party's case and upon which the nonmoving party will bear the

burden of proof at trial.  *See Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986).  If the non-

moving party fails to make such a showing on any essential element, "there can be no 'genuine

issue of material fact,' since a complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.[3]

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary

judgment, must be both "material" and "genuine."  An issue is "material" if it affects the

outcome of the litigation.  An issue, before it may be considered "genuine," must be established

by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to

resolve the parties' differing versions of the truth at trial." *Hahn v. Sargent*, 523 F.2d 461, 464

---

[3] *See also* Fed. R. Civ. P. 56(e)(2), which provides, in part:

> When a motion for summary judgment is properly made and supported,
> an opposing party may not rely merely on allegations or denials in its
> own pleading; rather, its response must–by affidavits or as otherwise
> provided in this rule–set out specific facts showing a genuine issue for
> trial.

**MEMORANDUM DECISION AND ORDER - Page 10**

(1st Cir. 1975) (quoting *First Nat'l Bank v. Cities Serv. Co. Inc.*, 391 U.S. 253, 289 (1968)).  The

Ninth Circuit cases are in accord.  *See, e.g., British Motor Car Distrib. v. San Francisco*

*Automotive Indus. Welfare Fund*, 882 F.2d 371 (9th Cir. 1989).  When applying this standard,

the court must view all of the evidence in a light most favorable to the non-moving party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Hughes v. United States*, 953 F.2d

531, 541 (9th Cir. 1992).

      **2.**        **Arguments of the Parties.**

      Mr. Wang contends he is entitled to summary judgment on his claims because the

government owes him a mandatory duty to adjudicate his adjustment of status application in a

timely manner, and the delay in his case is unreasonable as a matter of law.  The lack of a visa

number, he asserts, does not justify USCIS's delay, because he contends that the delay was

caused by Defendants' failure to properly adjudicate his application in August and September

2008.  He therefore asserts that because of the mistake, the Government should be precluded, or

estopped, from relying upon the argument that no visa number is currently available.  Mr. Wang

argues he has no alternate remedy, and therefore mandamus is appropriate.

      The Government Defendants contend that their hands are tied because USCIS cannot

adjudicate Mr. Wang's application without an available visa number from the Department of

State.  Defendants rely upon *Hernandez v. Ashcroft*, 345 F.3d 824, 844 (9th Cir. 2003), which

explained the difference between statutory eligibility for adjustment of status and USCIS's

ability to actually adjudicate an application.  For the former, Defendants argue, a visa number

must be immediately available at the time of filing, but to adjust an immigrant's status, a visa

number must be allocated by the Department of State.  Defendants explain that an application for

**MEMORANDUM DECISION AND ORDER - Page 11**

adjustment of status filed when a visa number is available may be eligible for adjustment of status, but if at the time of processing a visa number is not available the application must be held in abeyance pending the allocation of a visa number.

In this case, Defendants contend that visa numbers have retrogressed, and the Department of State has no visa numbers to allocate to second preference Chinese applicants with a priority date on or after October 2005. Defendants alternatively propose that, if the Court rejects their arguments in favor of granting Mr. Wang the relief he seeks, it would be preferable to order USCIS to adjudicate Mr. Wang's application within a certain number of days of a visa number becoming available rather than ordering USCIS to act in the absence of a visa number, which would require it to deny Mr. Wang's application according to its regulations. (Response at 4, Docket No. 27.)

As to Mr. Wang's estoppel argument, Defendants contend that Mr. Wang has not proven affirmative misconduct such that estoppel would apply. Defendants alternatively propose that the Court is unable to grant relief unless the Department of State, the agency responsible for administering the regulatory provisions relating to the numerical limitations on issuance of immigrant visas, is joined as a party.

### 3. Applicable Law.

#### a. Immigration and Nationality Act.

Adjustment of status applications are governed by 8 U.S.C. § 1255(a), which states:

> (a) Status as person admitted for permanent residence on application and eligibility for immigrant visa
>
> The status of an alien who was inspected and admitted or paroled into the United States or the status of any other alien having an approved petition for classification as a VAWA self-petitioner

> **may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if** (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, **and (3) an immigrant visa is immediately available to him at the time his application is filed.**

8 U.S.C. § 1255(a) (emphasis added).  The Attorney General's authority has, in part, been transferred to the Secretary of Homeland Security ("DHS") and the United States Customs and Immigration Services ("USCIS").  *See* 6 U.S.C. § 271(b)(5);[4] 6 U.S.C. § 557; *Tao Luo v Keisler*, 521 F.Supp.2d 72, 72 n.2 (D.D.C. 2007) (noting that Section 1255(a) gives the Attorney General authority to adjudicate adjustment of status applications, but that the authority has been transferred to the Secretary of Homeland Security and his delegate in USCIS).

USCIS regulations provide that "[a]n application for adjustment of status, as a preference alien, shall not be approved until an immigrant visa number has been allocated by the Department of State[.]"  8 C.F.R. § 245.2(a)(5)(ii).  It apparently is the practice of USCIS to not request a visa from the State Department until it determines that an applicant is otherwise

---

[4] 6 U.S.C. § 271(b)(5) states:

(b) Transfer of functions from Commissioner
In accordance with subchapter XII of this chapter (relating to transition provisions), there are transferred from the Commissioner of Immigration and Naturalization to the Director of the Bureau of Citizenship and Immigration Services the following functions, and all personnel, infrastructure, and funding provided to the Commissioner in support of such functions immediately before the effective date specified in section 455:
(1) Adjudications of immigrant visa petitions.
(2) Adjudications of naturalization petitions.
(3) Adjudications of asylum and refugee applications.
(4) Adjudications performed at service centers.
(5) All other adjudications performed by the Immigration and Naturalization Service immediately before the effective date specified in section 455.

eligible for adjustment of status.  (*See* Mem. at 5, Ex. 2, USCIS Field Adjudicator Manual, Docket No. 4-2.)

Section 1252 further provides that "no court shall have jurisdiction to review . . . any judgment regarding the granting of relief of an adjustment of status" or "any other decision or action of the Attorney General or the Secretary of Homeland Security [that is] in the discretion of the Attorney General or the Secretary of Homeland Security."  8 U.S.C. § 1252(a)(2)(B)(ii).

### b.    Mandamus.

Mandamus is an extraordinary remedy "available to compel a federal official to perform a duty only if: (1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available."  *Patel v. Reno*, 134 F.3d 929, 931 (9th Cir. 1997); 28 U.S.C. § 1361 ("the district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.").

### c.    APA Jurisdiction.

To invoke jurisdiction under the Administrative Procedure Act ("APA"), a "petitioner must show: (1) an agency had a nondiscretionary duty to act and (2) the agency unreasonably delayed in acting on that duty."  *Gelfer v. Chertoff*, 2007 WL 902382 at *1 (N.D. Cal., March 22, 2007) (citing *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 63-65(2004)).  "Once a petitioner has proven a right to relief under the circumstances, it is the reviewing court's duty to 'compel agency action unlawfully withheld or unreasonably delayed.'"  *Id.* (quoting 5 U.S.C. § 706(1)).  Section 706 provides, in pertinent part:

**MEMORANDUM DECISION AND ORDER - Page 14**

> To the extent necessary to decision and when presented, the
> reviewing court shall decide all relevant questions of law, interpret
> constitutional and statutory provisions, and determine the meaning
> or applicability of the terms of an agency action. The reviewing
> court shall—
> (1) compel agency action unlawfully withheld or unreasonably
> delayed;
> . . .
> In making the foregoing determinations, the court shall review the
> whole record or those parts of it cited by a party, and due account
> shall be taken of the rule of prejudicial error.

5 U.S.C. § 706.  The APA further directs that "each agency shall proceed to conclude a matter

presented to it" "within a reasonable time."  5 U.S.C. § 555(b).  However, 5 U.S.C. § 706(1) only

empowers a court to compel an agency "to perform a ministerial or non-discretionary act," or "to

take action upon a matter, without directing *how* it shall act."  *Norton*, 542 U.S. at 64.

In the Ninth Circuit, the *TRAC* factors are applied to assess whether relief under the APA

is appropriate.  *Independence Min. Co., Inc. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (citing

*Telecommunications Research & Action v. F.C.C.*, 750 F.2d 70, 80 (D.C.Cir. 1984) ("*TRAC*")).

The *TRAC* factors are:

> (1) the time agencies take to make decisions must be governed by
> a "rule of reason"[;] (2) where Congress has provided a timetable
> or other indication of the speed with which it expects the agency to
> proceed in the enabling statute, that statutory scheme may supply
> content for this rule of reason [;] (3) delays that might be
> reasonable in the sphere of economic regulation are less tolerable
> when human health and welfare are at stake [;] (4) the court should
> consider the effect of expediting delayed action on agency
> activities of a higher or competing priority[;] (5) the court should
> also take into account the nature and extent of the interests
> prejudiced by the delay[;] and (6) the court need not "find any
> impropriety lurking behind agency lassitude in order to hold that
> agency action is unreasonably delayed."

*TRAC*, 750 F.2d at 80, *cited in Independence Min. Co., Inc.*, 105 F.3d at 507 n.7.

**MEMORANDUM DECISION AND ORDER - Page 15**

### d.    Declaratory Judgment Act.

28 U.S.C. § 2201 states that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Under the Declaratory Judgment Act, Congress merely enlarged the range of remedies available in federal courts, but did not extend their jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950).  Therefore, the Declaratory Judgment Act cannot provide jurisdiction to a court that otherwise would lack independent statutory or diversity jurisdiction. *Lear Siegler, Inc. v. Adkins*, 330 F.2d 595, 599 (9th Cir. 1964) (holding that the Declaratory Judgment Act does not establish an independent basis for jurisdiction).  Furthermore, "the existence of jurisdiction in an action for declaratory relief does not require that the court exercise it.  It has a judicial discretion to decline to grant such relief." *Lear Siegler, Inc.*, 330 F.2d at 599.

### 4.    Disposition.

Because the relief sought by Mr. Wang under the Mandamus and Venue Act ("MVA") and the APA is essentially the same, the Court elects to analyze Mr. Wang's entitlement to relief under the APA.  *See Independence Mining Co., Inc. v. Babbit*, 105 F.3d 502, 507 (9th Cir. 1997) (construing a claim seeking mandamus and alternatively under the APA under the APA, since the relief sought under either the MVA and the APA is essentially the same).  This requires the Court to examine the source of the delay and to determine whether the delay was "unreasonable" by application of the *TRAC* factors.  *Alibeik v. Chertoff*, No. C-07-01938-EDL, 2007 WL 4105527 *5 (N. D. Cal. Nov. 16, 2007).

In the instant case, USCIS's mistake caused Mr. Wang's application to be delayed, not once, but twice.  At the time USCIS considered Mr. Wang's application in August 2008, Mr.

**MEMORANDUM DECISION AND ORDER - Page 16**

Wang had completed all necessary background checks, including his FBI name check.  But for USCIS's mistake in overlooking Mr. Wang's second preference visa application, Mr. Wang's application for adjustment of status could have been adjudicated in August 2008, when a visa number was allocated and available to second preference Chinese applicants with priority dates prior to June 1, 2006.  The mistake was compounded when, upon granting Mr. Wang's motion to reconsider the denial of his application on September 1, 2008, his application was not processed during September, when visa numbers were still available to second preference Chinese applicants having priority dates prior to August 1, 2006.  Instead, knowing of and admitting to its mistake, USCIS placed Mr. Wang back in line, and failed to adjudicate his application before available visa numbers retrogressed in October of 2008 to a priority date earlier than Mr. Wang's priority date.

Now, USCIS contends it can do nothing but wait, for how long it cannot say for certain, until the Department of State allocates visa numbers to second preference Chinese workers. Defendants contend that the wait is getting shorter, and that there should be a visa number available to Mr. Wang and his family by September of 2010.  Defendants justify the two year delay between September of 2008 and September of 2010 by citing to the regulation that prevents USCIS from acting until the Department of State allocates a visa number to the preference category.  But while the current delay may be caused by the lack of an available visa number allocated by the Department of State, the precipitating factor was USCIS's mistakes in August and September of 2008.  There would have been no delay had USCIS recognized that its mistake cost Mr. Wang an otherwise available visa number, and given his application preference at that time rather than placing his file back into the queue to languish until visa numbers retrogressed.

**MEMORANDUM DECISION AND ORDER - Page 17**

In the instant case, the Court finds the nearly two year delay to be unreasonable.[5]  One of the APA's basic purposes is to provide minimum standards for agency performance, and against that standard, reasonableness can be measured.  *Tang v. Chertoff*, 493 F.Supp.2d 148, 156 (D. Mass. 2007).  In *Tang*, the court noted that deference to agencies on the pace of adjudication would effectively lift the duty to adjudicate applications altogether, possibly result in interminable delays, and leave aliens in a state of "limbo," left to languish indefinitely.  *Tang*, 493 F.Supp.2d at 156.  In this case, the Court finds it difficult to reconcile USCIS's position—that it must wait for the Department of State to issue a visa number—before it can adjudicate Mr. Wang's pending application with the APA's requirement that delays must be "reasonable."  At some point, and under some circumstances, the delay becomes unreasonable despite a current lack of an available visa number.

Here, there is no evidence that Mr. Wang was responsible for any part of the delay.  The delay in this case was directly caused by USCIS's mistake in denying Mr. Wang's application in August of 2008, and then once it recognized its mistake, in failing to take action on Mr. Wang's application while it still had time to do so before visa numbers retrogressed in October of 2008.  Had there been no mistake by USCIS, the Court may be more inclined to find the proffered justification for the delay—that there are just too many applicants and not enough visa numbers—reasonable.  But the responsibility for the current lack of visa numbers is not attributable to Mr. Wang.  And in this case, there is a causal connection between the nearly two year (or possibly longer) delay and USCIS's actions, because the delay was precipitated by

---

[5]  The Court has already found that USCIS had a non-discretionary duty to act within a reasonable time in its memorandum decision deciding that it had jurisdiction under the APA and the MVA.  (Mem. Decision and Order, March 23, 2009, Docket No. 17.)  Thus, the first prong of the test under the APA and the MVA is satisfied.

USCIS's mistake.  *See Galvez v. Howerton*, 503 F.Supp.35, 40 (C.D. Cal. 1980) (citing the INS's positive acts as causally connected with the failure of the plaintiffs to be awarded permanent resident status).  USCIS now refuses to do anything about its mistake.

The TRAC factors also weigh against finding the delay in this case reasonable.  Human welfare is at stake.  *See Alibeik v. Chertoff*, No. C-07-01938-EDL, 2007 WL 4105527 *7 (N.D. Cal. Nov. 16, 2007).  The nature of the interests prejudiced by the delay are personal to Mr. Wang.  He is now that much farther away from qualifying for permanent residence status.  His work visa with Micron expires September 30, 2011, with no guaranty of renewal.  Mr. Wang argues that he has been unable to plan his future with regard to other employment and educational opportunities because of the delay.  (Pl. Mot. at 5, Docket No. 24.)  For Defendants to argue that Mr. Wang is not prejudiced because he can remain in the United States until 2011 and he is no worse off than before is to ignore USCIS's mistake and the hand it played in creating the position in which Mr. Wang now finds himself.  While USCIS's mistake may not have been intentional, good faith conduct is not dispositive of the reasonableness issue.  *Alibeik*, 2007 WL 4105527 at *7.

The Court therefore can compel agency action.  The question, however, is what, exactly, to compel.  USCIS can adjudicate adjustment of status applications by either issuing or refusing an otherwise eligible application.  *See Tang*, 493 F.Supp.2d at 155.  Thus, while a grant of adjustment of status may not be required, "adjudication of the application one way or the other is."  *Tang*, 493 F.Supp.2d at 155.  The current practice, however, is to hold otherwise eligible applications in abeyance until such time as a visa number becomes available.  *See* 8 C.F.R. § 245.2(a)(5)(ii).  And the Court is mindful of Defendants' position that, absent both current availability and the issuance of a visa number by the Department of State, if USCIS proceeds to

**MEMORANDUM DECISION AND ORDER - Page 19**

adjudicate Mr. Wang's adjustment of status application, it will deny the application despite admitting its mistake in rejecting Mr. Wang's application in September of 2008.  At least one court faced with the same argument that no visa number was currently available, although finding it had jurisdiction, declined to compel relief.  *See Bian v. Rice*, No. 3:08-CV-1651-L, 2008 WL 1514325 at *4 (N.D.Tex. June 1, 2009) (declining to order mandamus relief because, in the absence of an available visa number, it could not compel agency action).

However, other courts have compelled relief in the form of ordering USCIS and/or the Department of State to issue visa numbers or adjudicate applications when faced with unreasonable and unjustifiable delays.  For example, in *Galvez v. Howerton*, 503 F.Supp. 35 (C.D. Cal. 1980), the court found that the INS had engaged in affirmative misconduct when it improperly rejected plaintiffs' visa applications on two occasions because INS personnel were not familiar with their own regulations.  The court in *Galvez* found that the plaintiffs had been denied the status to which they were entitled, and also that the INS's affirmative misconduct in processing their applications estopped defendants from denying the plaintiffs permanent resident status.  *Galvez*, 503 F.Supp. at 40.  The court then ordered the Secretary of State, who was a named party, to issue visa numbers to the plaintiffs and to charge those numbers against the leftover and available visa allotments from the prior year.  *Id.*  There were also unused preference visa numbers from the prior year's allotment to allocate to the plaintiffs.  *See also Silva v. Bell*, 605 F.2d 978, 989 (7th Cir. 1979) (ordering the recapture, redistribution, and reissuance of wrongfully issued visa numbers charged against the Western Hemisphere quota).

In this case, the Secretary of State is not a named party, and there is no evidence that there are any unused second preference visa numbers for Chinese aliens such that the Court could order a remedy like in *Galvez*.  (*See* Decl. of Oppenheimer, Docket No. 41-1.)  The Court

also is not inclined to find that USCIS's mistake in this case, while serious, rises to the level of

the affirmative misconduct found in *Galvez* or *Silva*, both of which involved the misapplication

of established law.  There is no evidence or argument that USCIS misapplied its regulations like

in *Galvez*, or wrongfully administered an entire hemispheric allotment program, like in *Silva*.

Despite the distinguishing characteristics of *Galvez* and *Silva* which convince the Court

not to order USCIS and/or the Secretary of State, who is presently not a party, to issue Mr. Wang

a visa number and favorably adjudicate his application for adjustment of status at this time, the

Court cannot ignore what ultimately occurred in *Tang* and *Amanjee v. Chertoff*, No. CV S-08-

0499-JAM, 2009 WL 347666 (E.D. Cal. Feb. 11, 2009).  In *Tang*, the plaintiff sought an order

compelling agency action against the USCIS and the FBI to adjust his application status to that

of permanent resident.  Mr. Tang, a Chinese immigrant, submitted an employment-based second-

preference (EB-2) immigration petition through his employer.  The defendants, which did not

include the Secretary of State or the Department of State, indicated that background checks had

been completed but that Tang's application was still pending after four years.

Unlike in this case, the defendants did not argue that visa numbers were unavailable such

that Tang's application could not be adjudicated.  Finding no reasonable basis for the delay, the

court on June 26, 2007, ordered the defendants to adjudicate Tang's application for adjustment

of status to permanent resident within thirty days.  *Tang*, 493 F.Supp.2d at 158.  The court found

the defendants' argument that FBI background checks had not been completed illusory, because

the FBI had completed a name-check and simply found "no record."  *Tang*, 493 F.Supp.2d at

157. Miraculously, only a few weeks after the court's order, USCIS filed an affidavit on August

6, 2007, indicating that Tang's Form I-485 had been approved, and that it had issued Tang and

**MEMORANDUM DECISION AND ORDER - Page 21**

his wife a Permanent Resident Card.  *Tang*, Case No. 07-CV-10231-NG, Affidavit, Docket No. 19 (D. Mass. Aug. 6, 2007).[6]

Similarly, in *Amanjee*, Indian plaintiffs had filed third preference visa applications for adjustment of status.  The defendants, who included the directors of the FBI and USCIS, as well as Attorney General Mukasey, argued that the delay was caused by the inability to process the plaintiffs' FBI name checks as well as the unavailability of a visa number for applicants in the third preference category having priority dates on or before the plaintiffs' priority dates. *Amanjee*, 2009 WL 347666 at *3.  The court, however, rejected the defendants' argument that visa numbers were currently unavailable to third preference applicants having priority dates on or before plaintiffs' priority dates, because the defendants had never indicated that plaintiffs' applications were delayed for any reason other than FBI name checks.  *Amanjee*, 2009 WL 347666 at *3.  The court found it had jurisdiction premised both on the mandamus statute and on the APA, and in its report and recommendation, recommended the defendants' motion to dismiss be denied.  *Id.* at *4.  The district judge adopted the report and recommendation on March 13, 2009.  *Amanjee v. Chertoff*, No. 08-CV-499-JAM-DAD, Order, Docket No. 20 (E.D. Cal. March 13, 2009).[7]  On October 1, 2009, Amanjee filed a notice of voluntary dismissal indicating that, despite the lack of a visa number seven months earlier, USCIS had favorably adjudicated the

---

[6]  The Court takes judicial notice under Fed. R. Evid. 201(b)(2) of the docket and pleadings filed in *Tang v. Chertoff*, Case No. 07-CV-10231-NG (D. Mass. Feb. 6, 2007).  The docket and pleadings are accessible through the District of Massachuset's CM/ECF filing system.  The Court can only speculate that the ease with which Mr. Tang obtained his green card had something to do with his filing date of June 23, 2003, and priority date of October 29, 2002, because the defendants did not argue that visa numbers were unavailable.  *Tang*, Case No. 07-CV-10231-NG, Compl. Ex. D-3, Docket No. 1 (D. Mass. Feb. 6, 2007).

[7]  The Court takes judicial notice under Fed. R. Evid. 201(b)(2) of the docket and pleadings filed in *Amanjee v. Chertoff*, Case No. 08-CV-499-JAM-DAD (E.D. Cal. March 5, 2008)

**MEMORANDUM DECISION AND ORDER - Page 22**

plaintiffs' applications on September 3, 2009.  *Amanjee v. Chertoff*, No. 08-CV-499-JAM-DAD,

Order, Docket No. 35 (E.D. Cal. Oct. 14, 2009).

The Court also examined *Paunescu v. INS*, 76 F.Supp.2d 896 (N.D. Ill. 1999) and

*Marcetic v. INS*, No. 97-C-7018, 1998 WL 173129 (N.D. Ill. 1998), both cases in which the

court ordered the INS to adjust an alien's status to that of permanent resident.  In both cases,

immigrants had applied under the Diversity Immigrant Visa Program, which operates like a

lottery each year.  Also in both cases, the plaintiffs had filed their complaints and the court had

issued its orders to the INS to process the plaintiffs' applications prior to the end of the fiscal

year in which the plaintiffs applied.  The INS failed to process the plaintiffs' applications prior to

the end of the fiscal year, arguing it could do nothing once the fiscal year expired and visa

numbers were no longer available to the respective plaintiffs.

In *Marcetic*, the court noted that the INS failed to comply with the immigration judge's

order to process the plaintiff's application and had actually made a mistake in doing so.

*Marcetic*, 1998 WL 173129 at *1.  Faced with the government's argument that it could do

nothing because the fiscal year had expired and there were no more visa numbers, the court

noted that in *Silva* the INS "had no hesitation . . . in undoing past mistakes," and that the INS

could act if ordered to do so.  *Id.*  Therefore, the court in *Marcetic* ordered the INS to comply

with the immigration court's order, process plaintiff's application, and issue him a green card

despite the lack of an available visa number issued by the Department of State.  *Id.* at *2.

In *Paunescu*, the situation was similar in that the plaintiffs' application would have been

complete and they would have received a visa "but for" the INS's error.  Again, the court

ordered the INS to process the plaintiffs' applications, and grant them green cards over the

objection of the government that there were no visa numbers available after the close of the

**MEMORANDUM DECISION AND ORDER - Page 23**

fiscal year.  *Paunescu*, 76 F.Supp.2d at 903.  In neither case was the Secretary of State or the State Department a party, and in both cases, the government argued it could do nothing because visa numbers were no longer available after the close of the fiscal year.

Despite the similarities of this case with *Galvez*, *Paunescu*, *Marcetic*, *Tang* and *Amanjee*, and the apparent ability of USCIS to issue green cards in cases when it is ordered to do so despite the Department of State's lack of participation in the matter, the Court is left with the unfortunate task of noting the distinct differences that ultimately shape the remedy.  In both *Paunescu* and *Marcetic*, the court was asked to and did intervene prior to the expiration of the lottery program's fiscal year, when visa numbers were still available; thus, by failing to process the plaintiffs' applications, the INS had violated a court order.  In *Tang*, the government did not argue the lack of availability of a visa number as it does here, and the court therefore was able to find the government's reason for the delay illusory, because the FBI name check had actually been completed.  In *Amanjee*, the court rejected the government's argument that no third preference visa numbers were presently available because the argument was not advanced in any communications USCIS had with the plaintiffs.  Before the court could order defendants to process Amanjee's application, Amanjee voluntarily dismissed the case upon receipt of a green card.  And finally, unlike in *Galvez*, there is no evidence and no argument in this case that unused visa numbers remain available to be "recaptured" from a prior year's allotment for Chinese second preference applicants.

Although the Court finds the above line of cases distinguishable on their facts from the present case, the Court discussed them because, contrary to Defendants' argument, and under the right circumstances or as in *Silva* when the government is a willing participant in correcting its

**MEMORANDUM DECISION AND ORDER - Page 24**

mistake, USCIS can be ordered to rectify a mistake in processing an alien's application for adjustment of status.

The Court therefore concludes that it has jurisdiction, the delay in this case caused by USCIS's mistake in September 2008 is unreasonable, and Mr. Wang has no adequate remedy available, all warranting an order compelling agency action.  But because of Defendants' assertion and lack of proof to the contrary that no visa numbers are currently available to second preference Chinese immigrant workers having a priority date on or after October 31, 2005, and that the result of a court order to immediately adjudicate Mr. Wang's application would be denial due to the lack of availability of a visa number,[8] the Court follows the dicta in *Abbasfar* and the holding in *Bian*.  In both of those cases, the court recognized that the lack of availability of a visa number, although not relevant to the question of jurisdiction, *Abbasfar*, 2007 WL 2409538 at *5, was relevant to the relief it could order.[9]

The Court will therefore grant Plaintiff's motion for summary judgment under the APA, and order adjudication of Mr. Wang's application within ten (10) days after a visa number becomes available.  The Court also will order Defendants to show cause, by affidavit, each month as to why Mr. Wang's application cannot be favorably adjudicated at that time.

---

[8]  In *Hernandez v. Ashcroft*, 345 F.3d 824, 844 n.21 (9th Cir. 2003), the Court explained the difference between eligibility for adjustment of status versus the requirement for actually granting an adjustment of status.  Adjustment of status cannot actually be granted unless a visa number is also available at the time of adjustment.  *Id.*

[9]  Because of the conclusion reached in this case, the Court declines to decide whether, under Fed. R. Civ. P. 19(a), the Department of State must be joined as a necessary party.

**MEMORANDUM DECISION AND ORDER - Page 25**

**IV.**
**Conclusion**

Based upon above, the Court will grant Plaintiff's Motion for Summary Judgment and deny Defendants' Motion for Reconsideration.  The Court will deny Plaintiff's motion for status conference, as it found the matter suitable for disposition without oral argument and the need for a status conference is now moot.  The Court considered all supplemental authority the parties submitted in support of their respective positions, and therefore will grant Plaintiff's motion to supplement the record.

## ORDER

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that:**

1.      Defendants' Motion for Reconsideration, or in the alternative, Motion to Order Mr. Wang to Amend his Complaint to add the Department of State as an indispensable party (Docket No. 18) is **DENIED**;

2.      Plaintiff's Motion for Status Conference (Docket No. 39) is **DENIED as MOOT**;

3.      Plaintiff's Motion to Supplement the Record (Docket No. 40) is **GRANTED**; and

4.      Plaintiff's Motion for Summary Judgment (Docket No. 24) is **GRANTED**.

   a.      Defendants are **ORDERED** to adjudicate Mr. Wang's pending Application for Adjustment of Status within ten (10) days of the availability of a visa number.

   b.      Defendants are further **ORDERED** to show cause by affidavit, which shall be filed on the first day of each month, as to why Mr. Wang's application for adjustment of status cannot be favorably adjudicated at that time.  If at any time the Court considers the reasons advanced therein insufficient, the Court will hold a hearing and provide notice of an opportunity for Mr. Wang to appear.

DATED: January 12, 2010

_____
Honorable Candy W. Dale
Chief United States Magistrate Judge